# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

JOSEPH BART GOFF,                       )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )       Case No.   CV614-083
                                        )
CAROLYN W. COLVIN,                      )
*Acting Commissioner of Social*         )
*Security*,                             )
                                        )
        Defendant.                      )

## REPORT AND RECOMMENDATION

Joseph Bart Goff appeals the Social Security Commissioner's denial of his application for disability insurance and disability insurance benefits (DIB). Doc. 1. [1] He has exhausted his administrative remedies so his claims are now ripe for judicial review.

## I. GOVERNING STANDARDS

In social security cases, courts:

review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software. It may not line up with pagination on the original, printed page of each document.

to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the [Residual Functional Capacity (RFC)][2] to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the

---

[2] RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. BACKGROUND

Goff, aged 54 as of the 2012 hearing in this matter,[3] testified at both administrative hearings conducted by the ALJ. He stated that he is a high-school educated former insulation installer who worked for others and also ran his own insulation business "for four or five years." Doc. 16-2 at 51-53. He stopped working in 2007, *id.* at 53, when he applied for disability benefits. *Id.* at 23. He lives with his wife in a trailer and maintains an unrestricted driver's license. *Id.* at 54-55. Goff says he can't drive a car without cruise control because his right leg cramps up when he presses the accelerator pedal. *Id.* at 55, 81. He tries to do house chores but suffers from "cramp spasms." *Id.*

---

[3] There was a 2009 hearing but, following an adverse ALJ ruling, the Social Security Appeals Council remanded the matter for a second (2012) hearing. Doc. 16-2 at 23; doc. 21 at 1-2. The ALJ found facts from Goff's testimony at both. Doc. 16-2 at 32, 33 (comparing factual discrepancies in his testimony between the two hearings).

Sometimes he washes the dishes, or loads up the washing machine or "tr[ies] to cook on the grill." He engages in almost no travel or social activities, watches no TV because he has none, and he only leaves his trailer to sit outside[4] so he can warm up (unaffordable home heating). *Id.* at 55-58.

When the ALJ asked him what prevented him from working, Goff replied: "It's my spasm. When I get cramps I get them and I never know when they're coming." Doc. 16-2 at 58. He further explained: "I get cramps in my whole body. I get them in my legs, my jaws, my hands. My hands are severe. I get charley horses. Sometimes these cramps will last up to 45 minutes before I can get them to release." *Id.* at 58-59; *see also id.* at 65 ("I'm eat up with charley horses at night"). The cramps attack "[d]aily, especially in the afternoons, at night. Lots of times . . . . I can't even finish my dinner for the hand cramps." *Id.* at 59. His wife helps him address the cramping, and several times his rib-area cramps have sent him to the ER with rib fractures. *Id.* He is constantly awakened, while getting only about four hours a night of

---

[4] He explained that he is in pain -- in his back and neck -- so it is hard to sit for any length of time. "I got a swing that lays down into like a bed and I lay in it." Doc. 16-2 at 63. He lays mostly on his back. "I just had a shot because every time I lay on my sides my arms will go to sleep." *Id.* at 64.

sleep, from his cramps and spasms. *Id.* at 66.

Goff says that he also suffers from osteoporosis and Crohn's disease, though he is currently asymptomatic as to the latter. Doc. 16-2 at 68-69. Six out of every seven days he suffers level six (on the ten-scale) stomach pain. He also "drink[s] a lot of Pepto-Bismol." *Id.* at 69. His back pain is in the same range, and is driven by his cramps. *Id.* at 72. He suffers neck problems, too. *Id.* at 73. Pain radiates down his arms, and "I need that rotator cuff replaced or whatever they do." *Id.* at 73. Two or three days a week he is "plagued by headaches" afflicting him at a "four or five" level of pain. *Id.* at 74, 75. He also has "a hard time remembering numbers, like a phone number, area codes and stuff like that." *Id.* at 71. Depression often has confined him to his room and spawned much anger, but a psychiatrist put him on "Cymbalta," which has helped. *Id.* at 75-76. He is able to lift no more than a "ten pound bag of potatoes." *Id.* at 79.

A Vocational Expert (VE) testified that, after studying Goff's work history and listening to his testimony, an individual "at the light exertional level, [saddled with] a number of non-exertional limitations as well," doc. 16-2 at 84, would not be able to return to his prior work

because of its weight-related exertional requirements. *Id.* at 85. But that person could perform jobs as a parking lot attendant, ticket taker, or someone in "assembler production." *Id.* at 85-87. In fact, these jobs could be performed even with a moderate level of pain assuming (as Goff himself testified) no pain-med side effects. *Id.* at 87-88. Since Goff can perform those jobs, the ALJ concluded, he is not disabled. Doc. 16-2 at 38-39.

## III. ANALYSIS

Seeking reversal under 42 U.S.C. § 406(g), doc. 18 at 26, Goff challenges the ALJ's RFC finding by arguing that the ALJ failed to properly determine his physical capacity. *Id.* at 15-19. The ALJ, he insists, misread the record evidence and improperly credited a non-treating medical source's opinion over Goff's treating physician's. *Id.* The ALJ also erred in not finding he has a severe mental impairment, and his analysis of Goff's subjective complaints was improper. *Id.* at 20-26.

Given the nuances driving Goff's arguments, it is worth repeating that re-weighing evidence is simply *not* the judicial review standard. Again, "[i]f the Commissioner's decision is supported by

substantial evidence, this Court must affirm, even if the proof preponderates against it." *Mitchell,* 771 F.3d at 782 (quotes and cite omitted). That principle especially applies to the ALJ's comprehensive ruling here, where he explained why: (a) Goff was simply *not* credible and thus has exaggerated his incapacities[5]; and (b) the medical evidence otherwise supports a no-disability ruling.

In that regard, Goff's medical-opinion arguments turn on application of the deference levels an ALJ must apply to medical opinions:

> "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.,* 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin,* 2015 WL 764022 at * 3 (S.D. Ga. Feb.23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1160 (11th Cir.2004)).

*Conley v. Colvin,* 2015 WL 4166472 at *3 (S.D. Ga. July 9, 2015). "And

---

[5]  It is worth reminding that the government prosecutes disability fraud: http://www.justice.gov/usao-mdga/pr/retired-railroad-worker-sentenced-disability-fraud

an ALJ 'may reject the opinion of any physician when the evidence supports a contrary conclusion.' *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006)." *Motes v. Colvin*, 2015 WL 5693593 at * 5 (N.D. Ala. Sept. 29, 2015).[6]

Here the ALJ meticulously explained the basis for his decision. He noted that Goff does have Crohn's disease, a history of cardioid tumor of the terminal ileum, degenerative disc disease and spondylosis of the cervical, thorasic, and lumbar spine. Doc. 16-2 at 25-26. He also suffers from Cram-Fasiculation Syndrome and other maladies. *Id.* at 26. But plaintiff's own medical records, verbal contradictions and other comments (in quest of disability-payment dollars), the ALJ explained, militate

---

[6] *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004), illustrates how the foregoing criteria are applied in a case like this. The court there concluded that substantial evidence supported the ALJ's decision to assign a treating doctor's opinion little weight. *Id.* at 1240. The ALJ clearly articulated reasons for finding inconsistencies between the treating physician's records and the claimant's testimony, citing notes, dates, and the claimant's reports. *Id.* at 1241 (explaining that a doctor's notes detailing a claimant's "less severe" pain were inconsistent with a "very restrictive" assessment that the claimant could work three hours in an eight hour day and sit intermittently for up to 30 minutes, but had to lie down three to four times a day for 30 minutes to an hour at a time).

In contrast, the court in *Beck v. Astrue*, 663 F. Supp. 2d 1212 (N.D. Ala. 2009) reversed the ALJ's decision because the ALJ failed to provide support in discrediting a treating doctor's opinion. *Id.* at 1217-18 ("The ALJ does not explain in what way [the doctor's] treatment . . . is inconsistent with his opinion. . . . Nor does the ALJ . . . explain why he believes [the doctor's] opinion is inconsistent with the symptoms and limitations the claimant reported. . . ."). Hence, so long as the ALJ provides reasons supported by substantial evidence, his rulings must be affirmed.

against him. E.g.:

> In July 2011, the claimant presented against to Meadows Regional Medical Center emergency room with complaints of diffuse muscle aches and cramps. He also complained of moderate, intermittent abdominal pain. It was noted that he appeared to be in pain; he rated his own pain level 10/10 (on a scale of 1 to 10) (i.e., absolute agony); however, it was also noted that he was also alert, oriented, *but despite his complaints was in no acute distress. . . [.]*[7] A CT scan of the abdomen and pelvis showed no evidence of obstructive uropathy and no urinary calculi. He was discharged in improved and stable condition and diagnosed with acute abdominal pain of undetermined cause, acute renal insufficiency, vomiting, and benign prostatic hypertrophy.

Doc. 16-2 at 26 (cite omitted; emphasis original; footnote added).

Months later, Goff saw Dr. Kevin Coyle for pain management, complaining of, *inter alia*, pain spasms and cervical degenerative disc disease, then reiterated those and other maladies on May 8, 2012 to Dr.

---

[7] Note the Eleventh Circuit's pain-evaluation standard:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Luepnitz v. Colvin*, 2015 WL 1407755 at * 9 (N.D. Ala. Mar. 26, 2015).

Vasudev Kulkarni, when Goff revealed that "he had applied 2 to 3 times in the past for disability unsuccessfully, and was on appeal. He further stated that he stopped working in 2004 because of increasing muscle pain in his extremities." Doc. 16-2 at 26-27 (footnote added). Dr. Kulkarni opined that Goff could lift up to 50 pounds occasionally and 20 pounds continuously, and also perform the basic functions that fell within the VE's parameters. *Id.* at 27. The same "within-VE-hypothetical parameters" finding came from Dr. Douglas Hein on May 14, 2012. *Id.* (he opined that Goff could "lift/carry up to 20 pounds occasionally; he could sit 6 hours total, stand 2 hours total and/or work 1 hour total in an 8-hour day [etc.]").

Goff, the ALJ found, does suffer from "moderate pain," but he has the RFC to perform light work as defined by 20 CFR 404.1567(b).[8]  Doc.

---

[8]  That regulation defines light work:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

16-2 at 29. In that regard, the ALJ found that plaintiff's statements about the limiting effects of his pain "are not substantiated by objective medical evidence," *id.*, then "ma[d]e a finding on the credibility of [Goff's] statements based on a consideration of the entire case record." *Id.* At the September 2009 hearing, for example, Goff claimed one of the mains reasons why he could not work was because of his medications' side effects, but when confronted at the 2012 hearing with medical documentation he testified that he had never had any medication side effects. Doc. 16-2 at 33.

Goff also complained "that he has headaches 2 to 3 days a week" but there is no medical evidence of record to support this, and there is no underlying impairment to support those claimed symptoms. In fact, the ALJ pointed out, in both 2009 and 2011 medical records Goff denied experiencing headaches, nor mentioned them to Dr. Kularni or Dr. Hein. Doc. 16-2 at 30. Goff exaggerated about various other matters at the hearing. As to his capabilities, for example, plaintiff had earlier claimed that his insulation installer job required lifting up to 50 pounds but later (at the hearing) claimed it was 100 pounds. Doc. 16-2 at 30. Goff's "inconsistent and self-contradictory statements compromise his

20 CFR 404.1567(b). The ALJ expressly found that Goff fit this criteria.

credibility," the ALJ concluded. *Id.* at 33.

There is more. Doc. 16-2 at 30-32 (the Crohn's Disease appears to be managed, contradicting Goff's stomach ache claims; a small bowel obstruction was surgically addressed; rib fractures have completely healed; Dr. Kukarni's examination revealed "no neurological deficits, and musculoskeletal examination was unremarkable without any restrictions. [Goff] was ambulatory without assistive device, and posture and gait was normal . . . . The examiner noted the claimant was independent in his activities of daily living. He concluded that [Goff] could do light to medium work activities (lift/carry 20 to 50 pounds").

Much of the ALJ's no-credibility findings, for that matter, rest on discrepancies not only between what Goff claims and his medical evidence shows, but -- as noted above with his medication side-effects claim -- also between what Goff testified to, and did, in the 2009 and 2012 hearings. Doc. 16-2 at 33-34 (*e.g.*, on March 16, 2012 he entered the hearing room on crutches, but not at two consultative exams in May, 2012, nor at the November 7, 2012 hearing; nor were they prescribed, which led the ALJ to expressly wonder if there "were only being displayed as a stage prop").

It is against this background that Goff says the ALJ failed to

properly evaluate his credibility (doc. 18 at 23-25) and erred in determining Goff's physical capacity by impermissibly dismissing Dr. Coyle's opinions as "worth little." *Id.* at 18 at 16. Credibility findings, like other findings, are upheld upon substantial evidence. *Merritt v. Barnhart*, 430 F. Supp. 2d 1245, 1249 (N.D. Ala. 2006). In addition to the pain standards set forth *supra* n. 7, the Court notes that a condition that is not "easily seen or examined" should not automatically be discounted for a lack of objective evidence. "[I]n certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Cavarra v. Astrue*, 393 F. App'x 612, 615-16 (11th Cir. 2010); *see also id.* at 616 (adverse credibility determination regarding claimant's subjective testimony of pain following hernia surgery was not supported by substantial evidence; claimant did have a medical condition that could reasonably be expected to cause pain, he consistently complained of pain to his treating doctors, and absence of objective evidence of pain was reasonable given the nature of his condition). Hence, if an ALJ chooses to discredit testimony regarding pain, he must "articulate explicit adequate reasons for doing so." *Id.* at 615, quoted in *Rivers v. Colvin*, 2014 WL 3970191 at * 8 (N.D. Ala. Aug. 12, 2014).

Here, the ALJ painstakingly did just that. For each pain and discomfort claim he cited medical evidence if not also testimonial statements to reject them. Doc. 16-2 at 26-27. For example, while Goff claimed intermittent ineffectiveness of his medication, he generally received good response to medication therapy and epidural steroid injections with no side-effects. The ALJ also pointed out that Dr. Coyle's more recent (September, 2011) treatment notes reflected claimant's reported improvement in pain and functioning with pain medication for which Goff denied any side effects of medication. *Id.* at 31.

Dr. Coyle did opine that Goff could not "pursue gainful employment because he experiences constant pain in his neck, trapezius and upper thorasic, along with severe muscle spasms and consequently, he is unable to push, pull, kneel, bend, stoop, or use his upper extremities bilaterally to perform reaching, handling, as well as fine and gross manipulation." Doc. 16-2 at 35 (cite omitted). And an October 27, 2011 letter from Dr. Coyle insisted that Goff was totally disabled. But the ALJ discounted that letter because it "was based primarily on claimant's own subjective complaints rather than clinical and diagnostic findings." *Id.*

Goff argues that the ALJ erred on that score. Dr. Coyle, a treating

physician, "specifically stated that his opinions were based on clinical evidence of diffuse left-sided cervical spine tenderness, bilateral muscle spasms, restricted range of motion in the right lateral flexion, elbow, and forearm, and absent brachioradialis reflex on the left, as well as a diagnostic MRI of the cervical spine that revealed multilevel disc disease, facet arthropathy, and foraminal stenosis greatest at C5-6." Doc. 18 at 16-17 (cites omitted). And plaintiff cites other such evidence, too, doc. 18 at 17-18, reminding that Dr. Coyle's opinion was supported by Dr. Hein, the SSA's own examining, board-certified orthopedic surgeon. *Id.* at 19; *see also* doc. 16-15 at 89 (Hein's June 13, 2012 letter: "it is our impression that [Goff] is truly entirely incapable of doing any sustained physical activities."). Hein, Goff emphasizes, opined that Goff at most could sit for only two hours at a time, etc., and thus at best could perform only sedentary work. Doc. 18 at 19-20.

But substantial evidence authorized the ALJ to discount both of those opinions. Dr. Coyle reported in 2008, for example, that Goff "continues to improve" and "his upper extremities symptoms are now absent." Doc. 16-12 at 60. And his more recent (September, 2011) treatment notes show that plaintiff reported improvement in pain and

functioning with pain medication and he denied any side effects of medication. Doc. 16-15 at 2. Goff's overall medical treatment notes, as discussed by the ALJ, show that often enough he has suffered at worst *generally* mild or moderate tenderness and muscle spasm, plus normal gait and station, the full range of motion, strength and tone and stability of the shoulders, forearm, elbow, wrist and hand, and normal sensation in vital areas. Doc. 16-12 at 26.[9] It is true that the same medical treatment notes report issues like "chronic cervicalgia and LUE radicular pain," plus "[d]iffuse muscle spasm" as a "major issue," with a cervical spine MRI depicting "multilevel disc disease, facet arthropathy,[10] and

---

[9] Dr. Coyle's own examination continued to show no more than mild to moderate findings. Doc. 16-15 at 4. The plaintiff then had the full range of motion, strength and tone and stability of his shoulders, forearm, elbow, wrist and hand, normal sensation and palpitation, plus the full range of motion, muscle strength and tone, and stability of the left lower extremity. *Id.* True, Goff reported pain at a five level on a scale of one to ten, *id.* at 2, though he said medication reduced it to a four. Doc. 16-2 at 112. But as noted *supra*, ample record evidence (*e.g.*, Goff's own contradictions; Dr. Kulkarni's findings, doc. 16-15 at 91) authorized the ALJ to discredit Goff's disability-level pain claims.

[10] As one online medical source describes:

Simply put, facet arthropathy is degenerative arthritis affecting the facet joints in the spine. In the area of the spine where there are facet joints, arthritis pain can develop.

http://arthritis.about.com/od/spine/p/facet_joints.htm

Also:

forminal stenosis greatest at C5-6." Doc. 16-12 at 26. But these maladies all go to common conditions (many suffer from arthritis and "charley horses," yet go to work each day) and at levels of pain that are easy to minimize or exaggerate. Too (and importantly), no one prescribed corrective surgery. The ALJ also had the benefit of consulting/*examining* physician Kularni's opinion, who was expressly asked to reconsider his "no restrictions, no neurological deficits" opinion in light of Dr. Coyle's contrary opinion. Doc. 16-15 at 92. Kulkarni's July 20, 2012 response letter detailed the personal physical examination that he made of Goff and comprehensively affirmed his original opinion:

> After reviewing the material [Dr. Coyle's October, 2011 letter; the list of Goff's medications that he was then taking], I was certain this was a case of chronic musculoskeletal pain of more than 30 years duration. There was a history of muscle spasms and fasciculations. I proceeded to examine Mr. Goff after this and did a complete evaluation. During my examination of the musculoskeletal system, I did not see any muscle fasciculations myself and I did not detect any significant muscle spasm. I was aware that he was on all the medications mentioned above. With these symptoms being of intermittent nature, it is possible that on that occasion, he did not have any significant limitations at that time. My musculoskeletal

---

The facet joints are located at the back of the spine and counterbalance the intervertebral discs. They help keep the normal alignment of the spinal vertebrae and limit motion. The pain and discomfort that is caused by degeneration and arthritis of this part of the spine is called facet arthropathy, which simply means a disease or abnormality of the facet joints.

http://www.back.com/back-pain/conditions/back-arthritis/

system examination did not reveal any significant limitations. *Id.* at 91.

Goff also overlooks the fact that, at step two of the five-step evaluation process, a severe impairment must last for at least twelve consecutive months. *Beck*, 663 F.Supp.2d at 1216 ("The Act defines disabled as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . .' 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)."). Substantial evidence supports the ALJ's conclusion that Goff suffers no such impairments, and that Dr. Coyle based his limitations on Goff's subjective complaints as opposed to objective findings (hence, the ALJ was authorized to accord little weight to Dr. Coyle's disability opinion. *See Phillips*, 357 F.3d at 1240-41).

Goff also super-illuminates Dr. Hein's alignment with Dr. Coyle (in his June 12, 2012 letter, he concluded that Goff "is not capable of sustained gainful employment at this time," Doc. 16-15 at 74) but that is something that the ALJ was entitled to reject as a *de facto* adjudicative

conclusion reserved to the Commissioner. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) (substantial evidence supported ALJ's findings that claimant retained RFC to perform a reduced range of sedentary work and significant number of jobs existed in the national economy for claimant despite her limitations on interacting with the public; "a statement by a medical source that a claimant is 'disabled' or 'unable to work' does not mean that the Commissioner will determine that [he is] disabled.") (quotes, cite and alterations omitted and added); *see also id.* ("While Dr. Vrochopoulos generally opined that if untreated, Denomme's condition would likely prevent her from maintaining gainful employment, this was not a medical assessment, but simply an opinion on an issue reserved to the Commissioner's discretion.").

Goff also challenges the ALJ's mental impairment finding. Doc. 18 at 20-23. But again, at step two of the five-step evaluation process, a severe impairment must last for at least twelve consecutive months. *Beck*, 663 F.Supp.2d at 1216) ("The Act defines disabled as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . .' 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)."). Goff, for that matter, bears the burden of showing a mental impairment. *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); *Jackson v. Colvin*, 2015 WL 5601876 at * 18 (N.D. Ga. Sept. 23, 2015) (citing *Wilbon v. Comm'r of Soc. Sec.*, 181 F. App'x 826, 828 (11th Cir. 2006)).

The ALJ evaluated how Goff's physical and mental impairments impacted four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c). If the ALJ rates the degree of claimant's limitations in the first three functional areas as "none" or "mild" and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe. *See* 20 C.F.R. § 404.1520a(d)(1); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).[11]

---

[11] The ALJ expressly applied 20 CFR 404.1520(d):

> (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).

That's what the ALJ did. Citing Goff's 2009 and 2012 testimonial and other evidence, the ALJ found that Goff cared for his personal needs as well as fed, watered and bathed his pets. He also addressed his finances, performed light household chores such as washing dishes; did very small odd jobs around house; prepared breakfast daily and dinner twice a week; drove a car; (in 2009) watched television; went grocery shopping for one hour, weekly; and attended his sons' baseball games about once or twice a week when in season. Doc. 16-2 at 23-28. Goff also went outside every day and talked on the

---

(1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

(2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). *See* paragraph (e) of this section.

(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

20 CFR 404.1520(d).

phone with family members. *Id.* at 25-26. In April 2009, he reported that he had gone fishing and enjoyed it. Doc. 16-13 at 52.

Certainly plaintiff could have degraded over the intervening years, but the ALJ found otherwise. More significantly, he concluded that Goff's "mental impairments cause no limitation in activities of daily living, no limitation in maintaining social functioning, mile limitation maintaining concentration, persistence or pace; and he has experienced no repeated episodes of decompensation, each of extended duration.". Doc. 16-2 at 28. With no determinable mental impairment greater than "mild," the ALJ concluded, Goff's mental impairments were non-severe.

To that end, the ALJ was authorized to consider, and properly reject, the opinion of Dr. David Samuels, a treating psychiatrist (December 2008 to August 2009). An ALJ, for that matter, is not required to give *carte blanche* deference to a conclusory statement from any health professional and thus does not necessarily err in affording it little weight. *See Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (rejecting treating physician's conclusory opinion that claimant could not perform any gainful employment because no substantial

evidence supported it). Dr. Samuels completed a Psychiatric/Psychological Impairment Questionnaires, dated February 2009 and August 2009, in which he opined that Goff has marked limitations in understanding and memory, sustaining concentration and persistence, maintaining social functioning, and adaptation, and experiences episodes of deterioration or decompensation in work or work like settings, due to depression and anxiety. Doc. 16-12 at 67-74; doc. 16-13 at 39-64. Dr. Samuels evaluation notes also show, however, that plaintiff maintained appropriate appearance, behavior, thought content and affect, normal speech, motor, judgment, impulse control, memory, concentration and attention, and logical thought process with no thought disorder. Doc. 16-13 at 46, 48, 50, 52, 54; *see also id.* at 56 (treatment note repeating Goff's claim that "'I am stressed'" and that "he is still waiting for disability. It's been 3 years."). These records "showed average intelligence, logical thought process, and no thought disorder," the ALJ concluded, doc. 16-2 at 28, and that conclusion is evidentially supported. *See, e.g.*, doc. 16-13 at 56. Nor was there any "evidence of a longitudinal history of psychiatric impairment, of repeated hospitalizations," nor required intensive therapy -- nothing

beyond the use of a mild anti-depressive first prescribed by Goff's treating general practice physician. Doc. 16-2 at 28. Goff shows no legal grounds demonstrating why the ALJ was not authorized to reach that conclusion.

For that matter, the ALJ's ruling also details how he reviewed the other medical records Goff's cited in support of his "subjective allegations of depression." Doc. 16-2 at 28. In so doing, the ALJ adopted the "State agency psychological review opinions" that Goff "has no severe mental impairment." *Id.* And what mental impairments Goff does have, the ALJ was authorized (by record evidence) to conclude, "cause no limitation in activities of daily living (etc.)" after considering the Impairment Listing 12.00C found at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Goff has shown no legal error, nor lack of substantial evidence on his mental severity claim.

The remainder of Goff's arguments ride the same rails. They principally depend on evidence re-weighing, which this Court cannot do, or simply disagree with otherwise supportable credibility choices, for which the Court has been shown no good grounds to disturb. They also ignore the principle that "[a]n ALJ's decision also need not address

every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole." *Boone v. Colvin*, 2015 WL 4944093 at * 3 (S.D. Ga. Aug. 19, 2015) (citing *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 534 (11th Cir. 2014)).

## IV. CONCLUSION

Because substantial evidence supports the ALJ's decision, this case must be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED**, this  5th  day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA